UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VHS UNIVERSITY LABORATORIES, INC.,
d/b/a DMC UNIVERSITY LABORATORIES,

                 Plaintiff,                           No. 13-cv-13780

vs.                                         Hon. Gerald E. Rosen

LOCAL 283 OF THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN, AND
HELPERS OF AMERICA,

                 Defendant.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION
TO REMAND TO ARBITRATORS FOR HEARINGS ON THE MERITS AND
<u>DENYING MOTION FOR STAY OF ENFORCEMENT PENDING APPEAL</u>

                At a session of said Court, held in
                the U.S. Courthouse, Detroit, Michigan
                on February17, 2015

                PRESENT:   Honorable Gerald E. Rosen
                              United States District Chief Judge

## I. INTRODUCTION

     This matter is presently before the Court on the Plaintiff's post-judgment "Motion for Remand to Arbitrators for Hearings on the Merits and Motion for Stay of Enforcement Pending Appeal and for Waiver of Supersedeas Bond." Defendant has responded and Plaintiff has replied. Having reviewed and considered Plaintiff's Motion,

1

the parties' briefs, and the entire record of this matter, the Court has determined that oral

argument is not necessary.  Therefore, pursuant to Eastern District of Michigan Local

Rule 7.1(f)(2), this matter will be decided "on the briefs."

## II.  BACKGROUND

This matter came before the Court on the Complaint of Plaintiff VHS University

Laboratories, Inc. d/b/a DMC University Laboratories ("DMC") seeking an order to

vacate an arbitration award rendered by the Industrial Board Arbitration Committee (the

"Industrial Board"), the parties' agreed-upon arbitrator to decide grievances at the third

step of their collectively-bargained grievance procedure.  Specifically, DMC asked the

Court to vacate a decision rendered by the Industrial Board on August 19, 2013, with

respect to 24 grievances concerning holiday pay submitted by the Union on behalf of

DMC laboratory technicians, which stated:

> Based upon the fact that the Company has failed to pay grievance fees re:
> last month's board hearing, and the Company further being notified per
> said decisions as to when they had to pay, the grievance being read into the
> record, the Company is held in default per Rule 10 of the Rules of
> Procedure.

[Complaint, ¶ 6 and Ex. 2; *see also* First Amended Complaint, ¶ 6].[1]

_____

[1]  In its First Amended Complaint. Plaintiff also asked the Court to vacate several
subsequent substantially similar arbitration awards.  The subsequent awards at issue were
entered October 21, 2013, and January 13, 2014, and provided as follows:

> Based on the Company's non-payment of fees and dues, and their [sic]
> continued refusal to pay said fees and dues for prior cases, the grievance
> being read into the record, the Company is in default, and the grievance is
> upheld for the relief requested.

2

On October 24, 2014, this Court entered an Order and Judgment enforcing the default awards.

On November 5, 2014, Plaintiff filed the instant "Motion for Remand to Arbitrators for Hearings on the Merits and Motion for Stay of Enforcement Pending Appeal and for Waiver of Supersedeas Bond."

### III.  DISCUSSION

A.  MOTION TO REMAND TO ARBITRATORS

In this motion, Plaintiff first asks the Court to issue an order remanding the holiday pay dispute to "full and binding" arbitration, on the merits, as provided in Step 4 of the Grievance Procedure set forth in the CBA, and that it remand to arbitration before the Industrial Board four individual non-holiday pay grievances that were never appealed to the third step of the Grievance Procedure.  DMC claims that because it has now paid the arbitration fees for which it was defaulted by the Industrial Board, the Court should order that the issues underlying the grievances now be decided by the arbitrators "on the merits." The Court lacks authority to grant the relief requested.

A court may only remand a case back to the arbitrator when the arbitration award

---

*Id.*, ¶ 16.

> This case having been called, and the Company still refusing to pay prior grievance fees for cases it adjourned, with the advice and consent of the Board, and the grievance being accepted on its fact, held in favor of the Union for the relief requested by virtue of the Company being defaulted.

*Id.,* ¶ 18.

3

is ambiguous.  *NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076, 1081 (6th Cir. 1995).  To justify remand, however, the ambiguity must be in the award itself.  *United Steelworkers of America Local 4839 v. New Idea Farm Equipment Corp.*, 917 F.2d 964, 968 (6th Cir. 1990).  Where the award is not ambiguous, a district court's remand to arbitration is not proper.  *M & C Corp. v. Erwin Behr GmbH & Co*., 143 F.3d 1033, 1039 (6th Cir. 1998); *see also United Steelworkers of America, Dist. 36, Local 8249 v. Adbill Management Corp*., 754 F.2d 138, 142 (3rd Cir. 1985) (holding district court's remand improper because award was unambiguous); *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2nd Cir. 1987) (district court remand order reversed where there was nothing ambiguous or improper in the arbitrator's award).

There is no ambiguity in the Industrial Board's awards here.  The awards found the DMC in default, which resulted in the grievances being decided in the grievants' favor.  DMC attempts to make out a right to an order for remand claiming that holding DMC in "default" is somehow ambiguous. There is nothing ambiguous about the "default" holding.

The principal award, i.e., the award of August 19, 2013, specifically states "the Company is held in default per Rule 10 of the Rules of Procedure."   [Complaint, ¶ 6 and Ex. 2; First Amended Complaint, ¶ 6 (emphasis added).].  Rule 10 of the Industrial Board's Rules of Procedure states:  "*All annual dues and grievance fees must be paid when billed.  Failure to do this will deprive the Board of the ability to hear the case.*" (Emphasis added.)  "The parties bargained for arbitration to settle disputes and were free

4

to set procedural rules for the arbitrator to follow if they so chose." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc*., 484 U.S. 29, 39 108 S.Ct. 364, 371 (1987). The meaning of the award, thus, is clear:  It meant that the DMC could *not* present its arguments on the merits to the Board because it had not complied with the procedural prerequisite for doing so.  This is not changed by Plaintiff's payment of $3,600.00 for the past-due grievance fees on November 4, 2014, i.e., 15 months after the Board issued its decision.  Although it may well have cured any default on a going forward basis for purposes of the arbitration of any grievances after November 4, 2014, Plaintiff points to no provision in the contract or the Industrial Board's Rules of Procedure which would erase a decision made more than a year earlier.  Simply stated, there is no basis for this Court to now order the matter remanded to the arbitrators for a decision on the merits. Indeed, for the Court to do so would frustrate federal labor policy and subvert the arbitral process for which the parties collectively bargained.  Accordingly, Plaintiff's Motion to Remand will be DENIED.

B.     MOTION FOR STAY OF ENFORCEMENT PENDING APPEAL AND
       FOR WAIVER OF SUPERSEDEAS BOND REQUIREMENT

Plaintiff next asks the Court to stay enforcement of its October 24, 2014 Order and Judgment pending appeal.  In determining whether to grant a stay, the Court must consider the same four factors considered in deciding a motion for preliminary injunction:

(1) the likelihood that the party seeking the stay will prevail on the merits

of the appeal;

(2) the likelihood that the moving party will be irreparably harmed absent a stay;

(3) the prospect that others will be harmed if the court grants the stay; and,

(4) the public interest in granting the stay.

*Grutter v. Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001)(citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Griepentrog*, 945 F.2d at 153. Although the factors to be considered are the same for both a preliminary injunction and a stay pending appeal, the balancing process is not identical due to the different procedural posture in which each judicial determination arises. *Id.* Because a motion for a stay pending appeal is generally made after the district court has considered fully the merits of the underlying action and issued judgment, "a movant seeking a stay pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits. In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal." *Id.*

To justify the granting of a stay, however, a movant need not always establish a high probability of success on the merits. *Ohio ex. rel. Celebrezze*, 812 F.2d 288, 290 (6th Cir.1987) (citing *Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir.1985)). The probability of success that must be demonstrated is inversely

6

proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. *Id*. "Simply stated, more of one excuses less of the other." *Griepentrog*, 945 F.2d at 153. But, as the court in *Griepentrog* cautioned, "[t]his relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits." *Id.* (citation omitted). Thus, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits." *Id*. (citation omitted).

In evaluating the harm to the moving party and others depending on whether or not the stay is granted, the court looks to three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154 (citing *Ohio ex rel. Celebrezze*, 812 F.2d at 290). The harm alleged must be irreparable. *Id*. (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)). In addition the harm must be "both certain and immediate, rather than speculative or theoretical." *Id*. (citing *Wisconsin Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir.1985)).

In seeking a stay in this case, Plaintiff does not even mention the four factors let alone endeavor to demonstrate a strong likelihood of reversal on appeal or irreparable harm. Plaintiff, however, argues that it is entitled to a stay as of right pursuant to Fed. R. Civ. P. 62(d), and, therefore, the four-factor test is irrelevant.

7

Fed. R. Civ. P. 62(d) grants a plaintiff an automatic stay of execution or enforcement of a judgment pending appeal upon the posting of a sufficient supersedeas bond. *Arban v. West Publishing Corp*., 345 F.3d 390, 409 (6th Cir.2003) (citations omitted)  (finding that Fed. R. Civ. P.  62(d) "entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right.") Rule 62(d) provides:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d).

Rule 62(d) gives an appellant a right to a stay pending appeal, provided the appellant posts a "satisfactory supersedeas bond." *Arban v. West Pub. Corp., supra*. That is, in cases where appellant posts a bond, the district court does not have discretion to deny the stay.  *Dubuc v. Green Oak Twp.*, No. 08–13727, 2010 WL 3908616, at *2 (E.D. Mich. Oct.1, 2010).  The rationale is that the appellant is insured by the stay against inability to recover should he prevail on appeal, and in exchange the appellee receives the bond as security so that the appellant may not otherwise dispose of funds that could satisfy the judgment.  *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 351 (E.D. Mich.1998).  As this Court explained in *Hamlin*:

> The framework of Rule 62(d) represents a balancing of both parties' interests, in that it preserves the status quo while also protecting the

8

appellee's rights. *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir.1979). Rule 62(d) permits an appellant to obtain a stay "to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal." *Poplar Grove*, 600 F.2d at 1191. However, to preserve this right, the appellant must forego the use of the bond money during the appeal period.

For the appellee, Rule 62(d) effectively deprives him of his right to enforce a valid judgment immediately. Consequently, the appellant is required to post the bond to provide both insurance and compensation to the appellee. The supersedeas bond protects the non-appealing party "from the risk of a later uncollectible judgment" and also "provides compensation for those injuries which can be said to be the natural and proximate result of the stay." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir.1988), *Moore v. Townsend*, 577 F.2d 424, 427 (7th Cir.1978) (citing *Weiner v. 222 East Chestnut St. Corp*., 303 F.2d 630, 634 (7th Cir.1962)). Therefore, Rule 62(d) establishes not only the appellant's right to a stay, but also the appellee's right to have a bond posted. Because of Rule 62(d)'s dual protective role, a full supersedeas bond should almost always be required. *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979).

181 F.R.D. at 351.

Notwithstanding the "mandatory language" of Rule 62(d), courts have construed the bond requirement to be discretionary. *Id*. at 353. While,"[t]he courts generally require that the amount of the bond include the full amount owed under the award, and anticipated appeal costs, post-judgment interest, and damages for delay caused by the appeal," *EB-Bran Prods., Inc. v. Warner Elektra Atlantic, Inc.*, No. 03–75149, 2006 WL 1851010, at *3 (E.D. Mich. July 5, 2006) (citation omitted), it is within the district court's discretion to reduce the amount of the bond, substitute an alternate form of security for the bond, or dispose of the bond requirement entirely. *Id.;  Hopfinger v.*

9

*Kidder Int'l, Inc.*, 827 F. Supp. 1444, 1452-53 (W.D. Mo.1993); *see also Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 758-59 (D.C. Cir.1980). However, "[b]ecause of Rule 62(d)'s dual protective role, a full supersedeas bond should almost always be required." *Hamlin*, 181 F.R.D. at 351.

Plaintiff here, however, asks for a waiver of the bond requirement.

In *Arban v. West Publishing Co.*, the Sixth Circuit found no abuse of discretion on the part of the district court that waived the Rule 62(d) bond requirement where the evidence of record made it clear that the appellant would be able to satisfy the judgment. 345 F.3d at 409. In reaching this conclusion, the *Arban* court was persuaded by the Seventh Circuit's decision in *Olympia Equipment Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 784, 796 (7th Cir. 1986), in which the court held that "an inflexible requirement of a bond would be inappropriate . . . where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money." *Id.*

In the *Olympia* case, the plaintiffs obtained a $36 million antitrust judgment against Western Union Telegraph Company, the principal subsidiary of Western Union Company. Western Union Telegraph wanted a stay of execution of judgment pending appeal and, though it acknowledged that ordinarily to get a stay it would have had to post a supersedeas bond for the full amount of the judgment, it urged the district judge to allow alternative security, on the ground that it could not post a $36 million bond. The district court noted that although Western Union Telegraph is a large company, with total

10

assets nominally worth $2 billion, it was financially distressed and illiquid.  It could get a bond only by persuading a bank to issue a letter of credit to the bonding company, and it contended that no bank would do this. The district judge, therefore, allowed alternative security to be posted, consisting of a pledge of $10 million in cash, $10 million in accounts receivables, and a security interest, which Western Union Telegraph represented to be worth about $70 million, in some of the company's physical assets.  The appellate court found no abuse of discretion on the district court's part in allowing this alternate security in lieu of a bond under the "extraordinary circumstances" of the case.

Plaintiff contends that the Court should waive the bond requirement in this case because the DMC is now owned by Tenet Healthcare, a publicly traded company that "is profitable and has billions of dollars of revenue,"and this dispute involves only "small amounts of money."  Therefore, Plaintiff argues that the cost of the bond would be a "waste of money."   [*See* Plaintiff's Motion pp. 9-10].

To be sure, a bond for the full amount "can in some circumstances be irrational, unnecessary, and self-defeating." *Texaco Inc. v. Pennzoil Co*., 784 F.2d 1133, 1154 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). However, as the court observed in *Dubuc v. Green Oak Twp.*, "*Texaco* is obviously a unique case, as the $13 billion bond at issue there which when enforced would have had severe financial and business implications for the company, dwarfs the $15,000 sanction at issue in this case."  2010 WL 3908616, at *1 (citing *Texaco*, 381 U.S. at 4-5.).  There

11

is no request for, nor is the Court contemplating, such an outrageously disparate bond in this case.

When, as in this case, an appellant claims its ability to pay the judgment is so obvious that posting a bond would simply be a waste of money, courts have generally required the appellant to present "a financially secure plan for maintaining that same degree of solvency during the period of an appeal." *Hamlin, supra*, 181 F.R.D. at 353 (quoting *Poplar Grove Planting and Refining, Co., v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir.1979)). However, because Rule 62(d) expressly dictates that a supersedeas bond must be posted, only in "extraordinary circumstances" should anything less be required. *Hamlin*, 181 F.R.D. at 353 (citing *C. Albert Sauter Co. v. Richard S. Sauter Co*., 368 F. Supp. 501, 520 (E.D. Pa.1973)). Clearly, the "extraordinary circumstances" that existed in the *Texaco* and *Olympia* cases are not present here.

As this Court observed in refusing to waive the bond requirement in *Hamlin*,

[E]ven if [the appellants] demonstrated the existence of funds in excess of the judgment, waiving the bond on this factor alone ignores the dual protections Rule 62(d) is designed to provide the appellee. Waiving the bond requirement would deprive Mr. Hamlin of his right to execute the judgment immediately, without providing him the protection to which he is entitled. Rule 62(d)'s bond requirement serves a substantial function in balancing the parties' interest and is not a mere formality that should be waived simply because the losing party has adequate funds to satisfy the judgment. Ideally, losing parties will always have sufficient funds to pay the award, but if this fact alone were enough to waive the bond requirement, the bond requirement would essentially be a nullity. . . . In light of the protection and compensation that the bond would provide to Mr. Hamlin, the cost of the bond clearly would not be without benefits to balance the cost of posting it.

12

*Id*. at 353-54.

For all of the foregoing reasons, the Court finds that Plaintiff here has not made a sufficient showing of extraordinary circumstances that would justify waiver of the bond requirement in this case.

Rule 62(d), however, in no way necessarily implies that filing a bond is the only way to obtain a stay. "It speaks only to stays granted as a matter of right, it does not speak to stays granted by the court in accordance with its discretion." *Dubuc v. Green Oak Twp.,* 2010 WL 3908616 at *2 (citing *Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 758-59 (D.C. Cir.1980)). However, as indicated above, Plaintiff has made no effort whatsoever to demonstrate that the four-factor balancing test for the granting of a discretionary stay without bond is met.

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion for Remand to Arbitrators for Hearings on the Merits is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Stay of Enforcement Pending Appeal and for Waiver of Supersedeas Bond is GRANTED, in part, and DENIED, in part. The Motion is GRANTED in that the Court will issue a stay upon approval of a supersedeas bond for the full amount owed under the award, and anticipated appeal costs, post-judgment interest, and damages for delay caused by the

13

appeal.  It is DENIED in that the Court will not waive the bond requirement.

SO ORDERED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  February 17, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 17, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135